ANTONIO GIUDITTA et al., complainants,

*v.*

CARMELO BONACCI et al., defendants.

[Decided July 25th, 1923.]

**Conveyances—Setting Aside—Rules Governing—Rights of Ig-
norant and Uninformed Persons.**

On bills, &c.

*Messrs. Leavitt & Ulbrich,* for the complainants.

*Mr. Frank J. Burns,* for the defendants.

BENTLEY, V. C.

On January 31st, 1922, Angelo Giuditta executed a deed
conveying a piece of land with a two-family dwelling-house
thereon in the town of Westfield, to his daughter Carmelo
Bonacci, one of the defendants. On the following day he
died. At that time he was a very old man, probably seventy-
nine years of age, and suffering from diseases which caused
his death. The premises mentioned were the last of three
pieces of property he had acquired and all that he possessed
in the world, except certain rights under a prior deed that
will be mentioned hereafter. He was an illiterate man of
Italian birth, unable to speak the English language.

At the time of his death he left surviving two sons and
three daughters as his heirs-at-law, and his wife had prede-
ceased him. After the death of his wife he had resided with
his son Antonio, one of the complainants, until within about
two weeks of his death, occupying, however, separate rooms
from Antonio and his family. There was a sharp dispute
as to the terms of friendship upon which he lived with
Antonio; but I am convinced that their relations were
reasonably friendly.

About two weeks before he died Angelo went to the home of his daughter, the defendants Carmelo and her husband, in another town, as he had been accustomed to do; but this time he remained with them continuously and died in their home. On the day of his death Mr. Sauer, a solicitor of this court, with whom the grantor had had no previous business relations, was called upon by Carmelo's husband and drew the deed in question and sent it by a young man in his office to the home of the defendants for execution. On the way this clerk, in obedience to his instructions, secured a notary public, who accompanied him and the grantor's son-in-law to the latter's home, where the notary took the acknowledgment, using a daughter of Carmelo as interpreter. The testimony of these witnesses, all of whom were examined on the final hearing, indicates that there was nothing outside of the usual routine in the execution of an ordinary conveyance. The contents of the deed were explained to the grantor; he executed the same, which was absolute on its face and irrevokable, and the notary took the acknowledgment.

There was a great mass of testimony about the actions of the parties following the death of the grantor, and was so contradictory and so bitter that it is impossible to predicate any belief upon it and is of no importance because it was introduced by the parties under theories that are now abandoned.

Thus, we have the situation of a man within twenty-four hours of the grave, ignorant, diseased, moribund and helpless, voluntarily stripping himself of a very large percentage of his property, if not—in his circumstances—all the property upon which he could rely, and all of this was done in the bosom of a family upon whom he was dependent for the care that he required and without any advice as to the consequences of his act. When it is said that this was perhaps the only property upon which he could rely for his support it is because he had reserved to himself, in another conveyance made to another son, the right to use and occupy two rooms of the property conveyed during his life, and an

annuity of $360 per year. It requires no labor to show that such a covenant would be of small value to a man in his unfortunate position and advanced stage of life.

Having already indicated my impression that this conveyance could not be sustained because of the lack of independent advice, counsel for the defendants has striven with great ingenuity to distinguish this case from those I am present about to cite. His brief appears to have been based upon the theories—first, that the rule of independent advice only applies where the grantor has stripped himself of all his property, and secondly, that the execution of the deed was in consideration of the defendants assuming the burden of the incumbrance of a mortgage in the sum of $2,500. With regard to the latter claim, there might be great merit if there had been appropriately expressed the consideration of supporting the grantor for the balance of his life; but it seems to me that to say that the defendants, or either of them, agreed to do something that they would have had to do anyway to obtain the fruits of the conveyance need only be expressed to disclose the answer.

Nor do I understand that it is necessary that the grantor shall have parted with all his property to render a voluntary deed of gift invalid if it otherwise offends against the rule laid down in our cases. The so-called rule of independent advice has become so peculiarly fixed in our law that no assistance is to be obtained from an examination of the law in other states. The subject is sufficiently delineated by our decisions without the necessity of recourse to those of our sister states. In *Haydock* v. *Haydock,* Vice-Chancellor Van Fleet set aside two gifts made by the husband to his wife shortly before her death, upon the ground of undue influence. When this case was reviewed (*34 N. J. Eq. 570*) the court of errors and appeals (at *p. 574*) said:

"I take the rule to be settled that where a person enfeebled in mind by disease or old age is so placed as to be likely to be subjcted to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature

of the act, and that it was not done through the influence of the donee." *Huguenin* v. *Baseley, 2 L. C. (4th Am. ed.), notes 1183, 1185; American notes 1192, 1194.*

It is true that in this case the opinion of the appellate court also contemplated other rules, and indicated that there was a strong belief of mental incapacity; but that the meaning of the case is, as I have indicated, sufficiently shown by it, subsequently being cited to that effect in later opinions of the court of errors and appeals, such as *Slack* v. *Rees, supra.*

In *Hall* v. *Otterson, 52 N. J. Eq. 522,* Vice-Chancellor Green examined innumerable cases and thereupon lays down the following rule (at *p. 528*) :

"In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was *well understood,*" citing many authorities. The decree was affirmed in *53 N. J. Eq. 695,* on the vice-chancellor's opinion.

The leading case is the one just mentioned, namely, *Slack* v. *Rees, 66 N. J. Eq. 447.* In that case, in the court of chancery, Vice-Chancellor Reed had refused the complainant's prayer. In the court of errors and appeals the decree was reversed. The present chief-justice, in delivering the opinion of the latter court (at *p. 448*), says:

"That the absence of such advice will invalidate a deed of gift which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, and, indeed, it was so held by the vice-chancellor. He seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without power to assert his will in opposition to that of the donee. But this

is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate."

Nowhere does the rule seem to be laid down in such form that it will only be applied where the grantor dispossesses of all his property. On the other hand, the true rule is expressed in *Hall* v. *Otterson, supra,* where it is said:

"It is to secure this thorough understanding that courts of equity require, in cases of this kind, *except in those involving mere trifling gifts,* that the donor shall have independent advice. Page 529." (Italics are mine.)

In *Post* v. *Hagan, 71 N. J. Eq. 234,* the court of errors and appeals says (at *pp. 244, 245*) :

"That the donor in the present case ought to have had independent advice must be taken to be entirely established. That she did not have it is also clearly shown. Judge Paxton, the lawyer who drew the deeds and took the donor's acknowledgments, was employed for that purpose by the donee and appeared for her in the court below. She called upon him with the old deeds, from which he was instructed to draw two new deeds, in all respects similar to the old ones, saving as to the names of grantor and grantee, and when he had the deeds ready he was to attend upon the donor and have them executed. His instructions were both limited and explicit. These instructions he carried out. He was in no sense the advisor of the donor and at no time acted in that capacity. His only remark to the donor, as I recall it, was that cited by the vice-chancellor, viz., that he reminded her that she had a son."

This is so remarkably similar to the situation that existed in the case at bar, that with a change of name of the attorney and that he did not appear in court for the donee I might have used the same language, except that here no one ever

reminded the old man of his other children. Without consideration of the testimony as to the desire of the grantor to have his own attorney instead of Mr. Sauer, I prefer to place my decision squarely upon the rule, as I understand it, to be gathered from the foregoing cases. The rule is too salutary to be relaxed. It is a small thing to expect of expectant beneficiaries under such circumstances that they shall at least see that he whose bounty they hope to enjoy shall be given the opportunity of untrammeled consultation with some person competent under all the circumstances to advise him of the consequences of his act.

I will advise a decree setting aside the conveyance.